IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | C O M P L A I N T |
| WILLIAMS SAUSAGE COMPANY, INC. | ) ) | |
| Defendant. | ) ) ) | JURY TRIAL DEMAND |

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race, and to provide appropriate relief to Ronnie R. Simpson, Black, who was adversely affected by such practices.

As alleged with greater particularity below, Plaintiff, Equal Employment Opportunity Commission contends that Defendant, Williams Sausage Company, Inc., subjected Mr. Simpson to a racially hostile work environment and paid him less than White maintenance department employees because of his race, and that such actions by Defendant constructively discharged Mr. Simpson.

JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Western District of Tennessee, Eastern Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant, Williams Country Sausage, hereinafter ("Defendant Employer"), a privately-owned Tennessee company, has continuously been doing business in the State of Tennessee at its Union City facility and has continuously had at least 15 employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, Ronnie R. Simpson filed a charge with the Commission alleging violations of Title VII by Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. Since at least July 2007, Defendant Employer has engaged in unlawful employment practices at its Union City, Tennessee facility in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and Title I of the Civil Rights Act of 1991. The unlawful employment practices include subjecting Ronnie Simpson to wage discrimination because of his race, Black.

(a) Defendant Employer operates a pork meat processing plant located in Union City, Tennessee, that produces breakfast pork sausage products and sausage biscuit sandwiches.

(b) Ronnie Simpson began working for Defendant Employer in the maintenance department as maintenance (general).

(c) Simpson's starting wage was $9.00 per hour plus bonuses, and he received a raise on April 4, 2008 to $9.50 per hour.

(d) Simpson's job duties in the maintenance department were similar to other general maintenance employees and required substantially the same skill, effort and responsibility.

(e) Defendant paid White maintenance employees more in hourly wages throughout Simpson's employment, although Simpson was longer tenured and more experienced than many.

(f) Effective August 13, 2008, Defendant Employer awarded all White maintenance employees a $13.00 per hour pay rate while Simpson's pay rate remained at $9.50 per hour.

(g) Defendant never provided Simpson an explanation regarding the pay disparity and why he was not awarded the same pay increase as all of the White employees in maintenance.

8. The effect of the practices complained of in paragraphs 7 (c)-(g) above has been to deprive Mr. Simpson of equal employment opportunities and to otherwise adversely affect his employment because of his race, Black.

9. Since at least July 2007, Defendant Employer has engaged in unlawful employment practices at its Union City, Tennessee facility in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and Title I of the Civil Rights Act of 1991. The unlawful employment practices include subjecting Ronnie Simpson to a hostile work environment because of his race, Black.

(a) Simpson began working for Defendant Employer in the maintenance department as maintenance (general) around on July 21, 2007.

(b) Simpson was supervised by Maintenance Department Supervisor James Dial through July 18, 2008.

(c) From the period July 7, 2007, when Simpson worked in the Maintenance Department until December 2, 2008, when he went to the Processing Department, James "Bubba Johnson was observed by other plant employees, including at least one other supervisor, using racially offensive language in Simpson's presence.

(d) James Dial left his employment with Defendant Employer on July 18, 2008 and James 'Bubba' Johnson replaced him as Maintenance Department Supervisor.

(e) Simpson was the only African-American employee in the maintenance department under Johnson's supervision.

(f) White Maintenance Supervisor James "Bubba" Johnson frequently used profanity and racial slurs in Simpson's presence.

(g) Johnson used the 'nigger' epithet at least three to four times a week while supervising Simpson.

(h) Johnson assigned Simpson humiliating tasks and duties that were not given to White maintenance employees.

(i) The conduct described above unreasonably interfered with Mr. Simpson's work performance.

10. The effect of the practices complained of in paragraphs 9 (c) and (f)-(h) above has been to deprive Mr. Simpson of equal employment opportunities and to otherwise adversely affect his employment because of his race, Black.

11. The practices described above in paragraphs 7 and 9 above made Simpson's working conditions intolerable and forced him to resign.

12. The effect of the practices complained of in paragraphs 7, 9, and 11 above has

been to deprive Ronnie Simpson of equal employment opportunities and otherwise adversely affect his status as an employee because of his race.

13. The unlawful employment practices complained of in paragraphs 7, 9 and 11 above were and are intentional.

14. The unlawful employment practices complained of in paragraphs 7, 9 and 11 above were done with malice or with reckless indifference to the federally protected rights of Ronnie Simpson.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in acts of racial discrimination and constructive discharge.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for African-Americans and eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant Employer to make whole Ronnie Simpson by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement, promotion and front pay for Ronnie Simpson.

D. Order Defendant Employer to make whole Ronnie Simpson by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 7, 9, and 11 above, including but not limited to expenses for uniform or gear purchases, relocation, job search, medical expenses not covered by employee benefit plans, as well as other out-of pocket expenses, in amounts to be determined at trial.

E. Order Defendant Employer to make whole Ronnie Simpson by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 7, 9, and 11 above including, but not limited to, emotional distress, pain and suffering, embarrassment and humiliation, in amounts to be determined at trial.

F. Order Defendant Employer to pay Ronnie Simpson punitive damages for its malicious and reckless conduct described in paragraphs 7, 9, and 11 above in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

s/ Faye A. Williams (with permission KPA)
FAYE A. WILLIAMS
Regional Attorney

s/ Celia Liner (with permission KPA)
CELIA LINER
Supervisory Trial Attorney
AR Bar No. 90183

        s/ Kenneth P. Anderson
        KENNETH P. ANDERSON
        Trial Attorney
        DC Bar No. 469576
        Kenneth.anderson@eeoc.gov

        EQUAL EMPLOYMENT OPPORTUNITY
        COMMISSION
        1407 Union Avenue, Suite 901
        Memphis, TN  38104
        (901) 544-0137